RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MERRILL HAVILAND, et al.,
                *Plaintiffs-Appellants*,

    *v.*

METROPOLITAN LIFE INSURANCE COMPANY,
                *Defendant-Appellee*.

No. 12-1958

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-13176—Avern Cohn, District Judge.

Argued: March 5, 2013

Decided and Filed: September 12, 2013

Before: GIBBONS, KETHLEDGE, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey M. Thomson, MORGANROTH & MORGANROTH, PLLC, Birmingham, Michigan, for Appellants. James L. Griffith, Jr., AKIN GUMP STRAUSS HAUER & FELD LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Jeffrey M. Thomson, Mayer Morganroth, MORGANROTH & MORGANROTH, PLLC, Birmingham, Michigan, for Appellants. James L. Griffith, Jr., AKIN GUMP STRAUSS HAUER & FELD LLP, Philadelphia, Pennsylvania, David M. Davis, HARDY, LEWIS & PAGE, P.C., Birmingham, Michigan, for Appellee.

    GIBBONS, J., delivered the opinion of the court, in which KETHLEDGE, J., joined and STRANCH, J., joined in part. STRANCH, J. (pp. 17–26), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  General Motors Corporation ("GM") provides its salaried retirees with continuing life insurance benefits under an ERISA-governed plan.  Metropolitan Life Insurance Company ("MetLife") issued the group life insurance policy and periodically sent letters to plan participants advising them of the status of their benefits.  The plaintiffs, who are participants in the plan, allege that these letters falsely stated that their continuing life insurance benefits would remain in effect for their lives, without cost to them.  GM reduced the plaintiffs' continuing life insurance benefits as part of its 2009 Chapter 11 reorganization.  The plaintiffs filed this suit against MetLife bringing claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(2) & (a)(3) ("ERISA"), and state law.  The district court granted MetLife's motion to dismiss and the plaintiffs appealed.  For the reasons that follow, we affirm.

I.

The plaintiffs are salaried retirees of GM or its affiliates.  GM established and sponsored the Life and Disability Benefits Program for Salaried Employees ("the Plan").  MetLife issued the group life insurance policy provided under the Plan.  The Plan gave MetLife discretionary authority "to construe, interpret and apply the terms of the [Plan] and to determine eligibility for and entitlement to [Plan] benefits in accordance with the terms of the [Plan.]"[1]  (DE 7-9, 179–80; DE 7-10, 189; DE 7-11, 199.)

———————————

[1]The defendant attached to its motion to dismiss the 1987, 1990, 1993, 1997, 2000, 2001, 2005, 2007, and 2009 Plans.  (DE 7-1, Decl. Lawrence Rakowicz, 117–20.)  It also filed the Summary Plan Descriptions for 1977, 1979, 1980, 1985, 1987, 1988, 1989, 1990, 1995, 1996, 1998, 2000, 2005, 2006, 2008, and 2010.  (*Id.*)  Documents attached to a motion to dismiss may be considered part of the pleadings if they are mentioned in the complaint and are central to the plaintiffs' claims.  *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  The 1987, 1990, 1993, 1997, 2000, and 2001 Plans gave MetLife the discretionary authority "to interpret the terms of the [Plan] and to determine eligibility for and entitlement to [Plan] benefits in accordance with the terms of the [Plan.]"  (DE 7-3, 129; DE 7-4, 139; DE 7-5, 146; DE 7-6, 156; DE 7-7, 164; DE 7-8, 171.)

The plaintiffs allege that they were eligible for continuing life insurance benefits when they retired from GM because they had participated in the Plan for at least ten years. These benefits reduced over time to a minimum amount. The Plan provided that retirees would receive notification of the amount of life insurance to which they were entitled upon retirement or at the commencement of reductions to their benefits and when their minimum amount of benefits was reached. The plaintiffs were not required to contribute to their continuing life insurance benefits after the age of 65.

Each version of the Plan and its accompanying Summary Plan Description ("SPD") stated that GM "reserves the right to amend, modify, suspend or terminate the [Plan] in whole or in part, at any time." In addition to this language, the 1987 and 1990 Plans stated that continuing life insurance benefits "will be continued . . . until the death of the employe[e] . . . subject to the rights reserved to the Corporation to modify or discontinue this Program." (DE 7-3, 132; DE 7-4, Page 141.) In 2007, the Plan reduced continuing life insurance benefits for retired employees and stated that benefits would continue until the death of the employee or as otherwise modified at a later date. (DE 7-10, Ex. 8, 191.)

Pursuant to the Plan, the plaintiffs received periodic letters from MetLife advising them of the status of their continuing life insurance benefits. For instance, a letter to plaintiff Merrill Haviland stated:

> Metropolitan's records show that your Continuing Life Insurance has now fully reduced to the amount of $66,068.00. This amount of Continuing Life Insurance will remain in effect for the rest of your life. If you are presently contributing toward your Continuing Life Insurance, you will no longer be required to make contributions once you attain age 65.

(DE 1-2, Compl., 35.) A letter to another plan participant said: "This fully reduced amount of your Continuing Life Insurance remains in effect, without cost to you, for the rest of your life." (*Id.* at 36.) Finally, a third letter stated: "Metropolitan records show that you now have $103,400.00 of Continuing Life Insurance in effect, without cost to you, for the rest of your life." (*Id.* at 37.)

In 2009, GM and its affiliated debtors filed bankruptcy proceedings. The bankruptcy court approved the Amended and Restated Master Sale and Purchase Agreement, which reduced salaried retirees' continuing life insurance benefits to $10,000. The 2009 Plan reduced each salaried retirees' continuing life insurance benefits accordingly, effective August 1, 2009, and deleted language providing that the benefits would continue until the death of the retiree. (DE 7-11, Ex. 9, 204.)

The plaintiffs filed this suit in Michigan state court in June 2011 on behalf of themselves and putative class members. MetLife removed it to federal court, arguing that the district court had federal question jurisdiction because the state-court action is completely preempted by ERISA. Alternatively, MetLife asserted diversity jurisdiction under the Class Action Fairness Act. The Amended Complaint brings the following claims: (1) promissory estoppel; (2) breach of the terms of the Plan; (3) breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2); (4) declaratory judgment pursuant to 29 U.S.C. § 1132(a)(3); (5) unjust enrichment pursuant to 29 U.S.C. § 1132(a)(3); (6) equitable restitution pursuant to 29 U.S.C. § 1132(a)(3); (7) conversion; (8) unjust enrichment; (9) breach of contract; (10) negligent misrepresentation; and (11) violation of the Uniform Trade Practices Act. The district court granted MetLife's motion to dismiss the Amended Complaint, and the plaintiffs timely appealed the dismissal of their ERISA claims.[2]

## II.

We review a district court's ruling on a motion to dismiss *de novo*, construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true. *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

---

[2]The plaintiffs did not appeal the dismissal of their state law claims.

III.

"'ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).  It does so "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b). ERISA distinguishes pension plans that provide retirees with post-retirement income from welfare benefit plans.  Pension plans are subject to statutory vesting requirements. *See* 29 U.S.C. § 1053.  By contrast, "ERISA does not create a substantive right to welfare benefits . . . nor does ERISA establish a vesting requirement for welfare benefits. Indeed, a welfare benefit may be terminated at any time so long as the termination is consistent with the terms of the plan."  *Price v. Bd. of Trustees of Indiana Laborer's Pension Fund*, 707 F.3d 647, 651 (6th Cir. 2013) (internal citation omitted).

"The civil enforcement scheme of [§ 1132(a)] is one of the essential tools for accomplishing the stated purposes of ERISA."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).  It provides, in relevant part, that:

> A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

*A. Promissory Estoppel*

The plaintiffs allege that MetLife falsely promised that their continuing life insurance benefits would not be reduced for the rest of their lives, when in fact their benefits were reduced to $10,000.  According to the plaintiffs, these false promises affected the plaintiffs' retirement and estate planning decisions.

We addressed promissory estoppel claims under ERISA in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (*en banc*). The plaintiffs in *Sprague* alleged that GM violated ERISA by denying them fully "paid up" lifetime health care benefits. *Id.* at 392. The district court certified a class of early retirees and held, after a bench trial, that GM was estopped from changing the health care benefits of the early retirees based on oral and written representations it made to them. *Id.* at 396. On appeal, we explained that promissory estoppel claims are viable under ERISA. *Id.* at 403 n.13. The elements of a promissory estoppel claim are:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.* at 403. We clarified that "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Id.* at 404.

In *Sprague*, we held that the plaintiffs' estoppel claims failed as a matter of law because "GM's plan and most of the summary plan descriptions issued to the plaintiffs over the years unambiguously reserved to GM the right to amend or terminate the plan." *Id.* at 404. Accordingly, "reliance on statements allegedly suggesting the contrary was not, and could not be, reasonable or justifiable, especially when GM never told the plaintiffs that their benefits were vested or fully paid-up." *Id.*

Applying the reasoning of *Sprague* to this case, the plaintiffs' promissory estoppel claim fails to state a claim because the Plan is unambiguous. All of GM's Plans and SPDs unambiguously reserved to GM the right to "amend, modify, suspend or terminate the [Plan]." As a result, the plaintiffs could not reasonably rely on statements suggesting the contrary. The 1987, 1990, and 2007 Plans also state that continuing life insurance benefits are subject to modification by GM. But the absence of this statement reiterating GM's right to modify the Plan in the section about continuing life insurance

benefits does not render the Plans ambiguous. Each Plan reserves the right to amend, modify, suspend, or terminate the Plan, and this statement applies to all aspects of the Plan. Nothing in *Sprague* suggests that the right to amend or terminate a benefit must be contained within a specific plan provision.

According to the dissent, this case is distinguishable because, in *Sprague*, "GM never told the plaintiffs that their [health insurance] benefits were vested or fully paid-up." *Sprague*, 133 F.3d at 404. By contrast, the dissent argues that the Plan language is ambiguous as to whether the benefits were vested. It notes that the Plans issued from 1993 to 2005 stated that continuing life insurance benefits would be provided for the life of the retiree without a reservation clause in that section of the Plan. However, in *Sprague* we specifically rejected the argument that the language relied on by the dissent operates to vest benefits. The plaintiffs in *Sprague* asserted that GM breached the terms of the plan documents because under the plan their health care benefits were vested. 133 F.3d at 399. We explained that an intent to vest "must be found in the plan documents and must be stated in clear and express language." *Id.* at 400 (internal quotation marks omitted). In *Sprague*, the plan permitted GM to amend or terminate benefits. The same is true here. However, the plaintiffs in *Sprague* relied on the fact that the SPDs "told them that their health coverage would be paid 'at no cost to' them 'for [their] lifetime[s].'" *Id.* at 401. The plaintiffs argued that this language created an ambiguity within the SPDs regarding whether benefits had been vested. *Id.* We rejected this argument, explaining: "We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change." *Id.* We stated that "the promise made to retirees was a qualified one: the promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plans under which those benefits are provided." *Id.* at 401 (quoting *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 904 n.12 (3d Cir. 1995)).

In *Sprague*, the SPDs stated that the plaintiffs' health care coverage would be paid "for their lifetimes," and here, some of the Plans stated that the continuing life insurance benefits would continue "until the death of the Employee." But in both cases, the Plan also unambiguously reserved the right to amend or terminate the Plan. Therefore, the language in the Plan stating that benefits would continue for life does not vest the continuing life insurance benefits because the Plan also contains an unambiguous reservation of the right to amend or terminate the Plan. Moreover, the Plan stated that "[a]ll insurance is term insurance without cash, loan or *paid-up values*." (emphasis added.) In short, the promissory estoppel claim is not distinguishable from *Sprague*; rather, it is governed by *Sprague*.

This case does not fall under the exception to the rule that principles of estoppel cannot be applied to vary the terms of unambiguous plan documents articulated in *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010). In that case, the plaintiff, Richard Bloemker, received early retirement benefits from his employer-sponsored ERISA plan. *Id.* at 438. After receiving these benefits for almost two years, the actuary administering the plan notified Bloemker that the certified benefits calculation was incorrect, his payments would be decreased, and he was required to repay the excess he had received. *Id.* We held that the rule in *Sprague* that estoppel cannot be applied to vary the terms of unambiguous plan documents did not apply because neither of the rationales invoked by *Sprague* outweighed the extraordinary circumstances present in *Bloemker*. *Id.* at 443. The first rationale articulated in *Sprague* was that estoppel requires reasonable or justifiable reliance, and reliance cannot be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of the plan documents. *Id.* Bloemker alleged that it would have been impossible for him to determine the amount of pension benefit owed to him because of the complex actuarial calculations required to determine the amount and his lack of knowledge of relevant actuarial assumptions. *Id.* As a result, he sufficiently alleged that his reliance on the certification of his pension benefits was reasonable. *Id.* Second, we explained that enforcement of something other than the plan documents is consistent with ERISA under limited circumstances. *Id.* at 443–44. Specifically,

> a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel . . . plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id.* at 444. The exception articulated in *Bloemker* does not apply because the plaintiffs do not allege that a plan provision contained a complex calculation of benefits that the plaintiffs were unable to understand. Additionally, this case does not involve extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. We therefore affirm the district court's dismissal of the plaintiffs' promissory estoppel claim.

### B. Fiduciary Duty

Next, the plaintiffs allege that MetLife was a fiduciary with respect to the Plan and breached its fiduciary duty to the plaintiffs "by providing written notice to each of their Plaintiffs that the amount of their continuing life insurance benefits would not be reduced for the rest of their lives, where . . . MetLife was aware that the amount of each Plaintiffs' continuing life insurance benefits was conditional upon GM's continued payment of premiums to MetLife." (DE 20, Am. Compl., 484.) The plaintiffs also allege that MetLife breached its fiduciary duty by failing to inform the plaintiffs that the amount of their continuing life insurance benefits was conditioned on GM's payment of premiums to MetLife. (*Id.*)

MetLife responds by arguing that the plaintiffs failed to adequately allege that it acted in a fiduciary capacity in sending the notice letters. MetLife contends that the plaintiffs did not plausibly allege that MetLife had control over the content of the notice letters that it sent to the plaintiffs. MetLife also argues that the plaintiffs failed to state a claim for breach of fiduciary duty because they did not plausibly allege that the notice letters contained any misrepresentation. We need not decide whether the complaint adequately alleged that MetLife acted as a fiduciary because MetLife's second argument is dispositive.

The plaintiffs' fiduciary duty claim was expressly pled under 29 U.S.C. § 1132(a)(2), which allows plaintiffs to seek recovery on behalf of a plan. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007). However, in responding to MetLife's motion to dismiss, the plaintiffs argued that they also stated a plausible breach of fiduciary duty claim under § 1132(a)(1)(B) and § 1132(a)(3). MetLife addressed these new arguments without objecting that the claim had not been pled. At oral argument, the plaintiffs abandoned their claim under § 1132(a)(1)(B). Therefore, the fiduciary duty claim falls exclusively under § 1132(a)(3), which allows a plan participant to obtain appropriate equitable relief for violations of ERISA and the terms of a plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

> A person or an entity is a fiduciary
>
> with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A fiduciary must discharge his duties with respect to the plan "solely in the interest of the participants and beneficiaries." *Id.* at § 1104(a)(1). ERISA requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* at § 1104(a)(1)(B). "[A] person may be an ERISA fiduciary for some purposes, but not for others." *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (internal quotation marks omitted). In *Varity Corp.*, the Supreme Court held that Varity Corporation, the employer and plan administrator, breached its fiduciary duty when it conveyed false information to the plan participants about the security of their benefits. 516 U.S. at 501–06. The Court succinctly explained that "'[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries.'" *Id.* at 506 (quoting *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983)).

In *Sprague*, we rejected the plaintiffs' claim that GM breached its fiduciary duty when it explained its retirement program to early retirees. 133 F.3d at 405–06. Some of GM's SPDs did not explain that GM retained the right to amend or terminate the plan, but they did state that the plan participant's health care coverage would be provided by GM for his lifetime. *Id.* at 393–94. When the plan participants explicitly asked GM representatives about future changes to health care benefits, they were told that the benefits could be changed. *Id.* at 395. We held that, although GM may have acted in a fiduciary capacity in explaining its retirement program, "[a]s a matter of law . . . we do not believe that GM committed a breach of any applicable fiduciary duty." *Id.* at 405. Specifically,

> GM never told the early retirees that their health care benefits would be fully paid up or vested upon retirement. What GM told many of them, rather, was that their coverage was to be paid by GM for their lifetimes. This was undeniably true under the terms of GM's then-existing plan. . . .
>
> GM's failure, if it may properly be called such, amounted to this: the company did not tell the early retirees at every possible opportunity that which it had told them many times before—namely, that the terms of the plan were subject to change. There is, in our view, a world of difference between the employer's deliberate misleading of employees in *Varity Corp.* and GM's failure to begin every communication to plan participants with a caveat.

*Id.* We rejected the plaintiffs' fiduciary duty claim for another reason: GM was not required to disclose in its SPDs that the plan was subject to amendment or termination. "It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Id.* In concluding our analysis of the plaintiffs' fiduciary duty claim, we explained:

> Had an early retiree asked about the possibility of the plan changing, and had he received a misleading answer, or had GM on its own initiative provided misleading information about the future of the plan, or had GM been required by ERISA or its implementing regulations to forecast about the future, a different case would have been presented. But we do not think GM's accurate representations of its current program

can reasonably be deemed misleading.  GM having given out no inaccurate information, there was no breach of fiduciary duty.

*Id.* at 406.

The following year, we found that a fiduciary breached its duty and reversed the district court's grant of summary judgment to the defendant.  *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 545 (6h Cir. 1999).  The plaintiff, Margaret Krohn, was permanently disabled in an automobile accident.  *Id.*  We held that Huron Memorial Hospital, her employer and plan administrator, breached its fiduciary duty by failing to respond adequately to a request by Krohn's husband for information about plan benefits and by failing to alert its long-term-disability insurer that Krohn had made an application for benefits.  *Id.*  In doing so, we recognized that "'[a] fiduciary must give complete and accurate information in response to participants' questions.'"  *Id.* at 547 (quoting *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)).  Furthermore, we clarified that "a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Id.*

In *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439 (6th Cir. 2002), we again reviewed fiduciary duty claims under ERISA.  Like GM in *Sprague*, Pirelli amended its health care plan and required  participants to incur greater out-of-pocket expenses.  *Id.* at 444.  It encouraged employees to take early retirement and spoke with them about their benefits during group meetings and exit interviews.  *Id.* at 445.  Shirley Pike, an Assistant Employee Relations Manager, testified that when employees asked her how long their benefits would last, she said "during retirement."  *Id.* at 444.  "Pike also informed employees that their benefits would remain unchanged during their lifetimes." *Id.*  When asked about the language in the SPD allowing the company to alter or amend the plan, Pike "stated that it was written for the benefit of Pirelli to enable the company to change insurance carriers." *Id.*

We explained that *Sprague* "explicated the contours of an ERISA fiduciary's duty to disclose information to beneficiaries." *Id.* at 450. *Sprague* recognized a breach of fiduciary duty under three different conditions:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*Id.* at 453. In *Sprague*, none of these conditions had been met, and in *Krohn*, the first condition had been satisfied. *Id.* The *James* court added the caveat that *Sprague* "does not stand for the proposition that a reservation of rights provision in a SPD necessarily insulates an employer from its fiduciary duty to provide 'complete and accurate information' when that employer *on its own initiative* provides inaccurate and misleading information about the future benefits of a plan." *Id.* at 454–55. We then held that Pirelli breached its fiduciary duty in two different ways. First, some plaintiffs asked questions about the plan and received misleading and inaccurate answers. *Id.* at 455. Second, Pirelli representatives provided misleading and inaccurate information on its own initiative during group meetings and exit interviews. *Id.* Because Pirelli breached its fiduciary duty, we reversed the district court's partial judgment in favor of Pirelli following a bench trial. *Id.* at 448, 456.

Applying these principles to the case before us, we first note that the plaintiffs do not allege that they asked MetLife about the possibility of the plan changing and received an inaccurate or misleading answer. In addition, MetLife was not the employer and was not asked to forecast the future. We are left, therefore, with determining whether MetLife "on its own initiative provided misleading information about the future of the plan." *Sprague*, 133 F.3d at 406. This case is distinguishable from *Sprague* because the statements that the plaintiffs allege amount to a breach of fiduciary duty were included in letters from MetLife, as opposed to SPDs promulgated by GM. Accordingly, the second reason for rejecting the plaintiffs' fiduciary duty claim in

*Sprague*—that we will not imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed—does not apply here.

Nonetheless, we found that the plaintiffs' fiduciary duty claim in *Sprague* failed for another reason: GM did not make any misrepresentation. In *Sprague*, the SPDs made representations such as: (1) "Your basic coverages will be provided at Corporation expense for your lifetime. . . ."; (2) "Your basic health care coverages will be provided at GM's expense for your lifetime. . . ."; and (3) "[GM] pays for full cost of any basic health care coverages that are continued for most retired employees and for eligible surviving spouses and children of deceased retirees." *Id.* at 394. Not all of the SPDs put the plaintiffs on notice of GM's right to amend or terminate the plan. *Id.* By comparison, the letters sent by MetLife stated: (1) "This amount of Continuing Life Insurance will remain in effect for the rest of your life."; (2) "This fully reduced amount of your Continuing Life Insurance remains in effect, without cost to you, for the rest of your life."; and (3) "Metropolitan records show that you now have $103,400.00 of Continuing Life Insurance in effect, without cost to you, for the rest of your life." (DE 1-2, Compl., 35–37.)

For the reasons described in *Sprague*, the representations in the letters sent by MetLife were not inaccurate or misleading. MetLife did not tell its participants that the benefits were fully paid up or vested upon retirement. Rather, MetLife told them that their benefits would be in effect for their lifetimes, which "was undeniably true under the terms of GM's then-existing plan." *Id.* at 405. Moreover, explanations of benefits

> tend to sound promissory by their very nature. While these explanations may state a company's current intentions with respect to the plan, they cannot be expected to foreclose the possibility that changing financial conditions will require a company to modify welfare benefit plan provisions at some point in the future.

*Id.* (quoting *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 857 (4th Cir. 1994)). Without any misrepresentation or inaccurate statement, the plaintiffs' fiduciary duty claim fails as a matter of law.

*C. Breach of the Plan Terms*

The plaintiffs next assert that MetLife breached § 3.05(a) of the Plan, which gave MetLife discretionary authority "to construe, interpret and apply the terms of the Plan, and to make determinations with respect to participants' eligibility for, and entitlement to, benefits under the terms of the Plan." The plaintiffs allege that MetLife failed to act in good faith when it advised them in writing that their continuing life insurance benefits would remain in effect for life because MetLife knew that benefits were conditional on GM's payment of future premiums.

The plaintiffs point to *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 444 (3d Cir. 2001), for the general proposition that a party who is granted discretion under a contract must exercise that discretion in good faith. But *Goldstein* held that the administrator of a "top hat" pension plan "has no fiduciary responsibilities," thus requiring the court to look to contract law to determine whether the court's review of the administrator's actions should be *de novo* or deferential. *Id.* at 442–43. That question is not presented here, so *Goldstein* does not assist us. The plaintiffs' citation to a Michigan contract case, *Burkhardt v. City National Bank of Detroit*, 226 N.W.2d 678 (Mich. Ct. App. 1975), also is not helpful because that case did not concern an ERISA plan.

To the extent the claim sounds in state contract law, the district court held that ERISA expressly preempts state-law claims, 29 U.S.C. § 1144(a), and the plaintiffs have not challenged the district court's preemption analysis on appeal. Accordingly, the plaintiffs failed to state a plausible claim that MetLife breached the terms of the Plan.

*D. Unjust Enrichment*

In connection with the promissory estoppel claim, the plaintiffs argued that MetLife failed to disclose to them that GM was continuing to make premium payments to keep their insurance in force. By contrast, in relation to the unjust enrichment claim, the plaintiffs alleged that the premiums were fully paid up; therefore, MetLife is unjustly

enriched if it is allowed to keep premiums without providing the plaintiffs with the promised coverage.

Although the plaintiffs are permitted to allege alternative legal arguments based on inconsistent facts, *see Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 n.3 (6th Cir. 1990), their claim that MetLife must disgorge insurance premiums or be unjustly enriched is not plausible. *See Iqbal*, 556 U.S. at 678. The plaintiffs do not allege that *they* paid the premiums to MetLife. If they did not pay the premiums, they are not entitled to disgorgement of the premium payments. Moreover, even assuming MetLife accepted insurance premiums from GM, it seems indisputable that, in return for those premiums, MetLife agreed to and presumably did pay death benefits during the policy period for which the premiums were paid. This claim was properly dismissed under Rule 12(b)(6).

### *E. Equitable Restitution*

The last claim is not a new theory of recovery, but a proposed remedy for other alleged ERISA violations. Plaintiffs request a constructive trust and/or equitable lien on all funds MetLife received in the course of its allegedly wrongful conduct, plus interest, costs, and attorney fees. Because we affirm the district court's dismissal of this action, the plaintiffs are not entitled to any relief.

### IV.

For the foregoing reasons, we affirm the district court's dismissal of this action.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part. Having examined the complaint de novo in a light most favorable to the plaintiffs, I conclude the plaintiffs stated plausible claims for breach of fiduciary duty and promissory estoppel against MetLife that warrant further factual development in district court. Accordingly, I would reverse the judgment dismissing those two claims and remand for further proceedings, but I would affirm the dismissal of all other claims.

We review de novo the district court's Rule 12(b)(6) decision to dismiss, and in doing so we must view the complaint in the light most favorable to the plaintiffs and accept all factual allegations as true. *See Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). To overcome a motion to dismiss, the plaintiffs' complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but plaintiffs need not show that recovery is probable. *Erie Cnty.*, 702 F.3d at 867. It is not our place to weigh the evidence, "but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003). I am convinced that the plaintiffs pled cognizable claims for breach of fiduciary duty and promissory estoppel.

## I. Breach of Fiduciary Duty

In constructing ERISA's statutory scheme, Congress ensured that employers and third-party administrators who manage welfare benefit plans for employees and beneficiaries act with the highest fiduciary duty known to the law. *See Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410, 417 (6th Cir. 2012). A person or entity qualifies as a fiduciary

> with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[O]ne is a fiduciary to the extent he exercises *any* discretionary authority or control." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).

The duties of fiduciaries fall into three categories. *Dudenhoefer*, 692 F.3d at 417. First is the duty to remain loyal to plan participants and beneficiaries and ever vigilant of their interests. *Id.* Second is the unwavering duty to act as a prudent person would act under similar circumstances with "single-minded devotion to [the] plan participants and beneficiaries." *Id.* (internal quotation marks omitted). Third is the responsibility to act for the sole purpose of providing benefits to the plan beneficiaries. *Id.* These standards derive from the common law of trusts, bearing in mind the special nature and purpose of employee benefit plans. *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996); *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

Plan fiduciaries must communicate fully and accurately with plan participants and beneficiaries about the provisions of a welfare benefit plan. A fiduciary breaches his duty if he provides the plan participants or beneficiaries with materially misleading information, regardless of whether the statements or omissions were made negligently or intentionally. *See James*, 305 F.3d at 449.

To prevail on a claim of breach of fiduciary duty, the plaintiffs must show that: (1) MetLife acted in a fiduciary capacity when it made challenged representations; (2) MetLife's statements constituted material misrepresentations; and (3) the plaintiffs relied on MetLife's material misrepresentations to their detriment. *See id.* "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which she may be entitled." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999); *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 844 (6th Cir. 2003).

The plaintiffs allege that MetLife omitted a material fact from the written notices MetLife sent to inform them about the status of their continuing life insurance benefits: that GM reserved a right to modify or terminate the Plan. Material omissions, like material representations, can mislead, whether they are accomplished through negligent or intentional conduct. *See Krohn*, 173 F.3d at 547 (finding breach of fiduciary duty based on material omission).

In *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), "this Court, sitting *en banc*, explicated the contours of an ERISA fiduciary's duty to disclose information to beneficiaries." *James*, 305 F.3d at 450. Although the *Sprague* court ultimately held that GM did not breach its fiduciary duty in modifying a health insurance plan for retirees, the *James* court explained *Sprague* as analyzing

> a possible breach of fiduciary duty in terms of three disjunctive conditions. A breach of fiduciary duty occurs if (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*James*, 305 F.3d at 453 (citing *Sprague*, 133 F.3d at 405–06). *See also Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 666 (6th Cir. 1998) (observing *Sprague* recognizes that an explanation of Plan benefits may be subject to ERISA's fiduciary standards). Although *Sprague* concluded that no breach of fiduciary duty occurred because none of the three specified conditions was met in that case, in *Krohn* we "found that the first condition was satisfied when the plan administrator breached its fiduciary duty by not providing complete and accurate information in response to the participant's questions about available [long-term disability] benefits." *James*, 305 F.3d at 453; *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir. 2006) (noting *Krohn* recognized an equitable claim under § 1132(a)(3) where ERISA fiduciary misled plan participant or beneficiary).

In *James*, we considered the second scenario mentioned in *Sprague*, concluding the trial evidence showed that the employer, on its own initiative, provided false and misleading information to employees about future benefits of a health insurance plan.

*James*, 305 F.3d at 453–56.  In remanding for further proceedings, *id.* at 456, we relied on a Third Circuit case finding a similar breach of fiduciary duty where the employer affirmatively represented to its employees that their medical benefits would continue for life after retirement.  *Id.* at 453–54 (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995)).  We also considered *McMunn v. Pirelli Tire, LLC*, 161 F. Supp. 2d 97, 123 (D.Conn. 2001), which "found that 'by continuing to assure plaintiffs that they would receive the same benefits in retirement until their death without reference to the reservation of rights, defendant failed to convey complete and accurate information, and instead provided materially misleading information,' upon which three of the plaintiffs detrimentally relied." *James*, 305 F.3d at 454.

The reasoning of *James* is instructive here even though *James* involved a bench trial and this case comes to us on a Rule 12(b)(6) dismissal.  As we apply the principles explained in *James*, we are required to view the plaintiffs' complaint in the light most favorable to them and accept all of their factual allegations as true.  *See Erie Cnty.*, 702 F.3d at 867.  The plaintiffs allege, and we must take as fact, that MetLife acted in a fiduciary capacity when it prepared the written notices guaranteeing the plaintiffs' continuing life insurance benefits would remain "in effect, without cost to you, for the rest of your life" while failing to mention that GM reserved a right to modify the Plan in the future.  *See Varity Corp.*, 516 U.S. at 505 ("making intentional representations about the future of plan benefits . . . is an act of plan administration"); *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 831–32 (6th Cir. 2007) (holding issue of material fact existed on whether defendants acted in fiduciary capacity when misrepresentations were made).

Taking as true that MetLife acted as a Plan fiduciary when it prepared the notice letters to retirees, MetLife had an obligation to provide the plaintiffs with complete and accurate information.  *See James*, 305 F.3d at 453–56; *Sprague*, 133 F.3d at 406.  "[I]n *Unisys*, the Third Circuit ruled that the reservation of rights provision did not protect an employer from liability for a breach of fiduciary duty 'where a company has deliberately

fostered the belief that retirement benefits are lifetime benefits, and is aware that its employees incorrectly—if understandably—believe that their . . . benefits will continue unchanged for the duration of their retirement.'" *James*, 305 F.3d at 454 (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d at 1265 n.15). We explained in *James*:

> *Sprague* does not stand for the proposition that a reservation of rights provision in a[n] SPD necessarily insulates an employer from its fiduciary duty to provide "complete and accurate information" when that employer *on its own initiative* provides inaccurate and misleading information about the future benefits of a plan. Indeed, *Sprague* explicitly allows for a breach of fiduciary duty claim under such a circumstance. Were it otherwise, an employer or plan administrator could provide, on its own initiative, false or inaccurate information about the future benefits of a plan without breaching its fiduciary duty under ERISA, simply because of the existence of a reservation of rights provision in the plan. However, this would be contrary to the basic concept of a fiduciary duty, which "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn*, 173 F.3d at 548; *see also Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668 (2d Cir. 1994) (noting that "when a plan administrator speaks, it must speak truthfully").

305 F.3d at 454–55.

The majority dismisses under Rule 12(b)(6) the very claim that the referenced quotation from *James* found explicitly authorized by *Sprague*. First, it finds *Sprague* distinguishable because the letters at issue were from MetLife and not GM. (Maj. Op. at 13–14.) But *James* specifically notes that the breach of duty may be committed by an employer or *plan administrator*, *James*, 305 F.3d at 455, (here, MetLife) and does so for the obvious reason—a breach of duty claim may be stated against whatever entity is serving as a fiduciary to the plan. Second, the majority finds that plaintiffs fail to state a claim because at the time MetLife sent the letters promising benefits, they were true. (Maj. Op. at 14.) But the letters were only true in part. They omitted any reference to GM's right to change the Plan terms. The majority's approach ignores the conclusion in *James* that a plan administrator (MetLife), acting as a fiduciary, could not on its own initiative provide inaccurate or misleading information to the plaintiffs concerning their

(continuing life insurance) benefits simply because the Plan and SPDs circulated (to GM salaried employees and retirees) included a reservation-of-rights clause. *James*, 305 F.3d at 454–55. *James* teaches that this is true because fiduciary duties entail "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.*[1]

Based on these authorities, the plaintiffs stated a plausible claim for breach of fiduciary duty under § 1132(a)(3) that should not have been dismissed under Rule 12(b)(6). Section 1132(a)(3) is "broad enough to cover individual relief for breach of a fiduciary obligation." *Varity Corp.*, 516 U.S. at 510. Accordingly, I would reverse the dismissal of this claim so that the parties can further develop the facts, including MetLife's contention that it did not act in a fiduciary capacity when it sent the written notices to the retirees. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (noting proper inquiry is whether person or entity performed a fiduciary function when taking action subject to complaint); *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) (noting fiduciary status is generally a question of fact although it may be a question of law if facts are undisputed).

## II.  Promissory Estoppel

The promissory estoppel claim, aimed at requiring MetLife to fulfill the promise stated in the notice letters—to provide the retirees with continuing life insurance benefits for the duration of their lives–is likewise viable and should be permitted to proceed. In this circuit we treat the theories of promissory estoppel and equitable estoppel interchangeably, and under certain circumstances, a plan participant may state an ERISA claim for benefits under either theory. *See Sprague*, 133 F.3d at 403 & n.13 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). Estoppel principles ordinarily cannot be employed to vary the terms of unambiguous plan documents, but they can be invoked if plan provisions are ambiguous. *See Sprague*, 133 F.3d at 404.

---

[1]Moreover, *Sprague*'s rejection of the ERISA claims brought by GM retirees related to their health insurance benefits does not control our decision here because "*Sprague* considered whether a plan administrator must provide unrequested information, not whether an administrator may mislead when providing information." *See Gregg*, 343 F.3d at 845.

Whether the Plan documents are clear and unambiguous is an objective inquiry. *See Smiljanich v. Gen. Motors Corp.*, 302 F. App'x 443, 448–49 (6th Cir. 2008) (affirming judgment in favor of plaintiff on equitable estoppel theory). Having reviewed the Plan documents in this way, I find patent ambiguity in the language used to inform the salaried employees and retirees about the duration of their continuing life insurance benefits. *See id.*

The Plan administered by GM and MetLife did not consistently inform employees and retirees whether their continuing life insurance benefits vested for life. To be sure, GM reserved a general right to amend, modify, suspend, or terminate the Plan in § 3.04 of the Plan, but the Plan provision more specific to continuing life insurance benefits was found in § 4.02. In 1987 and 1990, the Plan stated in § 4.02 that life insurance benefits would remain in effect until the death of the employee, subject to GM's reserved right to modify or discontinue the Plan. Yet, MetLife did not convey the entirety of this Plan language when it sent the notice letters to the retirees in the 1987 to 1990 time period. MetLife's notices stated only that the continuing life insurance benefits will remain "in effect, without cost to you, for the rest of your life" or "will remain in effect for the rest of your life." MetLife did not inform the retirees that GM reserved the right to change the benefits.

Later versions of § 4.02 in the Plan documents issued in 1993, 1997, 2000, 2001, and 2005 dropped the "subject to" language referring to GM's reserved right to modify or discontinue the Plan. During those years, § 4.02 expressly notified employees and retirees that continuing life insurance benefits would remain in effect until their deaths. Because "[w]elfare benefits vest, if at all, based on the terms of the Plan," *Price v. Bd. of Trustees of Indiana Laborer's Pension Fund*, 707 F.3d 647, 651 (6th Cir. 2013), this change in Plan terminology was significant. Reading § 4.02 in conjunction with MetLife's written notices, the retirees reasonably could have believed that their continuing life insurance benefits would remain in effect for the duration of their lives and detrimentally relied on that understanding, even though their understanding may

have been erroneous in light of GM's general reserved right to modify or terminate the Plan.

These facts distinguish this case from *Sprague*, where "GM never told the plaintiffs that their [health insurance] benefits were vested or fully paid-up." *Sprague*, 133 F.3d at 404 (citing *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 907 (6th Cir. 1988)). Here, § 4.02 promised lifetime benefits without any reservation of rights language in that section in the five Plan documents issued from 1993 through 2005. In 1987 and 1990, § 4.02 had included a reservation of the right to modify or discontinue the benefits but that language was removed for the next fourteen years. Only in 2007 did the Plan change § 4.02, adding language that benefits would continue until the death of the employee "or as otherwise modified at a later date." The "later date" arrived in 2009, when GM reduced the retirees' continuing life insurance benefits to a flat sum. Consequently, the ambiguity apparent in the Plan language from 1987 to 2009 compels me to conclude that promissory estoppel may be a viable theory of recovery for these plan participants.

The plaintiffs adequately pled the elements of a promissory estoppel claim. *See Sprague*, 133 F.3d at 403 (citing *Armistead*, 944 F.2d at 1298). As to the first element, they alleged that MetLife's unqualified statement in the written notices—that plaintiffs' continuing insurance benefits would remain in effect for life—constituted a representation of material fact, and that MetLife failed to disclose that GM was continuing to make premium payments to MetLife to keep the plaintiff's continuing life insurance benefits in force. Plaintiffs alleged as to the second element that MetLife received copies of the various versions of GM's Plan and SPDs yet failed to convey the true facts accurately to the plaintiffs. Whether the plaintiffs could ultimately prove that MetLife intended to deceive them or acted with gross negligence amounting to constructive fraud would remain to be seen, *see Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007), but our precedent confirms a prior successful prosecution of a similar claim. *See Smiljanich*, 302 F. App'x at 449–51 (affirming judgment for

plaintiff on estoppel claim where plaintiff proved that GM acted with gross negligence in making representations about Plan).

With regard to the third and fifth elements, the plaintiffs adequately alleged that they reasonably believed MetLife intended for them to act upon its representation in the notice letters and that they reasonably relied on MetLife's representation to their detriment in retirement and estate planning. Taking the facts favorably to the plaintiffs, their reliance on MetLife's notice letters and the Plan language of § 4.02 as in effect between 1993 and 2007 was reasonable and justifiable. *See id.* at 450. Finally, as to the fourth element, plaintiffs alleged that they were unaware of the true facts and for purposes of Rule 12(b)(6), we must accept that allegation as true.

The plaintiffs' case is strikingly similar to the situation presented in *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001). There the employer issued SPDs prior to 1987 that appeared to vest life insurance benefits for the lifetimes of eligible retirees without reserving a right in the employer to reduce or eliminate the insurance. *Id.* at 79–80. In subsequent years, the employer issued other plan documents and SPDs; some reserved the right to reduce or eliminate life insurance benefits, while others were ambiguous on the point. *Id.* at 80–81. Ultimately, the employer dramatically reduced its retirees' life insurance benefit to a flat amount, and the retirees sued. *Id.* at 81. The Second Circuit reversed summary judgment for the employer, holding that the plaintiffs had pointed to specific written language, primarily in the pre-1987 SPDs, that could reasonably be interpreted as the employer's promise to vest the retirees' life insurance benefits. *Id.* at 83–84. Here the plaintiffs alleged that GM's Plan documents contained a similar promise and those documents, when combined with MetLife's written notice letters, misled the plaintiffs into believing that life insurance was a lifetime benefit. They also allege that they reasonably relied on that promise.

In this case the Plan terms are ambiguous concerning two key issues: whether the retirees' continuing life insurance benefits remained in effect until death; and, whether MetLife informed the retirees that their benefits remained in effect until death, without warning them that the Plan reserved to GM the right to modify the Plan.

Accordingly, I conclude that the plaintiffs alleged sufficient facts to warrant further development of the promissory estoppel claim in discovery. The claim should not have been dismissed under Rule 12(b)(6). In the event the plaintiffs ultimately were to prevail on this estoppel claim, § 1132(a)(3) would provide authority for the district court to place the retirees "in the same position [they] would have been in had the representations been true." *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) (internal quotation marks omitted).

Our precedent makes clear to me that the breach of fiduciary duty and promissory estoppel allegations state claims upon which relief may be granted and should not be dismissed under Rule 12(b)(6). I agree with the majority that the district court properly dismissed the plaintiffs' remaining claims. Therefore, I would affirm in part, reverse in part, and remand the case for further proceedings.