RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0217p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

BOARD OF TRUSTEES OF THE LOCAL 17 IRON WORKERS PENSION FUND,

          *Plaintiff-Appellant*,

    *v.*

HARRIS DAVIS REBAR LLC and DAVIS JD STEEL LLC,

          *Defendants-Appellees*.

No. 14-3997

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:14-cv-00533—Donald C. Nugent, District Judge.

Argued: June 10, 2015

Decided and Filed: September 2, 2015

Before: COLE, Chief Judge; GILMAN and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Susan L. Gragel, GOLDSTEIN GRAGEL LLC, Cleveland, Ohio, for Appellant. Lee J. Hutton, LITTLER MENDELSON, P.C., Cleveland, Ohio, for Appellees. **ON BRIEF:** Susan L. Gragel, Andrew A. Crampton, GOLDSTEIN GRAGEL LLC, Cleveland, Ohio, for Appellant. Lee J. Hutton, Inna Shelley, LITTLER MENDELSON, P.C., Cleveland, Ohio, for Appellees.

———————————

## OPINION

———————————

KETHLEDGE, Circuit Judge. In this case the Trustees of a pension fund allege that one of the defendant employers (Harris Davis Rebar LLC, which we call "Davis Rebar") signed a labor agreement as a device to allow the other defendant employer (Davis JD Steel LLC, which

1

we call "JD Steel") to evade its obligations under a different labor agreement. The Trustees therefore ask us to treat the two companies as one—and thus to hold that Davis Rebar is bound by the terms of JD Steel's labor agreement, which requires JD Steel to make contributions to the Trustees' pension fund rather than to union defined-contribution plans, which is what Davis Rebar is required to contribute to. The problem with that argument is that the same association of iron-workers unions negotiated and signed both agreements with the two employers. What the Trustees seek, therefore, is to have us set aside the union association's judgment regarding its members' best interests—as reflected in the contracts that the association negotiated and signed—in favor of the Trustees' judgment or our own. We see no reason to do that, so we affirm the district court's dismissal of the Trustees' claims.

The following facts are pled in the Trustees' complaint or undisputed. In 2006, the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (the "Iron Workers" or the "Association") negotiated a contract that required JD Steel to provide its employees with certain wages and benefits. As relevant here, that contract required JD Steel to make certain contributions, on behalf of its employees, to the pension funds for local unions in the areas in which the employees performed work. For the relevant period here, those contributions equaled $10.00 for every hour that a JD Steel employee worked in the territory of a local union. Thus, for example, when JD Steel performed work in the territory of the Local 17 Iron Workers Union, JD Steel was required to contribute $10.00 to the Local 17 Iron Workers Pension Fund (the "Fund," which is an entity separate from the Union) for every hour that a JD Steel employee worked there. These contributions were in addition to the workers' hourly wages.

Seven years later, in 2013, the Iron Workers negotiated a contract with another company, Davis Rebar. That contract was similar to the one with JD Steel except that, rather than require contributions to the local unions' pension funds, the contract required Davis Rebar to make contributions of an identical amount to the local unions' defined-contribution plans. (A 401(k) plan, for example, is a type of defined-contribution plan.) Davis Rebar has made all such contributions as required by its contract with the Iron Workers.

Meanwhile, in the summer of 2013, JD Steel worked on a parking garage at Cleveland's Fairview Hospital while Davis Rebar worked on a parking garage across town at University Hospital. Both of these jobs were within the territory of the Local 17 Iron Workers Union. Again according to the complaint, Davis Rebar used equipment and vehicles bearing JD Steel's name and logo. The companies also shared a foreman and supervisors, who sometimes told Davis Rebar's employees to perform work for JD Steel at the Fairview Hospital.

The Trustees thereafter filed this action under 29 U.S.C. § 1132(a)(3), which allows ERISA plan fiduciaries (like the Trustees) to enjoin and seek redress for violations of the terms of an ERISA plan (the Fund is such a plan). The Trustees' theory in bringing the suit was that JD Steel and Davis Rebar are in fact the same company, which in the Trustees' view means that Davis Rebar is bound by JD Steel's contract with the Iron Workers. Thus the Trustees contend that, in addition to the $10.00 that Davis Rebar has already paid into Local 17's defined-contribution plan for every hour that Davis Rebar's employees worked in Local 17's territory, Davis Rebar was required to contribute another $10.00 per hour worked to the Fund. Notably absent from this suit, however, is the Iron Workers Association or the Local 17 Union itself. The district court dismissed the Trustee's suit for failure to state a claim, holding that there was no reason in this case to disregard the separate corporate forms of JD Steel and Davis Rebar. We review that decision de novo. *Haviland v. Metropolitan Life Ins. Co.*, 730 F.3d 563, 566-67 (6th Cir. 2013).

Federal law generally respects the corporate form, so normally a company must sign a contract to be bound by it. *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 586 (6th Cir. 2006). But a judge-made doctrine—known as the "alter-ego" doctrine—allows courts to treat two companies as the same entity when necessary to prevent either of them from manipulating its corporate form to evade its labor obligations. *Trustees of Detroit Carpenters Fringe Benefit Funds v. Industrial Contractors, LLC*, 581 F.3d 313, 318 (6th Cir. 2009). Thus, if the doctrine applies, a labor contract signed by one company will bind its alter ego as well. *Id.*

The alter-ego doctrine is an equitable one, and thus a plaintiff that seeks to apply the doctrine must allege (and ultimately prove) that the defendant company somehow manipulated

its corporate form to frustrate federal labor policy. *See Trustees of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 247-48 (6th Cir. 2005); *Mass. Carpenters Central Collection Agency v. A.A. Building Erectors, Inc.*, 343 F.3d 18, 21-22 (1st Cir. 2003). The doctrine does not require, as a "prerequisite to imposition of alter ego status," that a company specifically *intended* to evade its obligations to a labor union when it changed its corporate form. *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 581 (6th Cir. 1986). But the doctrine does require that the employer's manipulation of its corporate form in fact "made the union somehow worse off." *Resilient Floor*, 395 F.3d at 248 (internal quotation marks omitted). Thus, absent some showing that the employer's use of its corporate form "has caused the union to receive less than that for which it bargained, there is no inequity that would justify a court's imposition of liability." *Id*. at 248 (internal quotation marks and alterations omitted).

Here, the Trustees allege that JD Steel created Davis Rebar in order to evade or minimize JD Steel's obligation, per its agreement with the Iron Workers, to make contributions to the Fund. But the signatory to JD Steel's contract—namely, the Iron Workers—does not make that same complaint. To the contrary, the Association itself negotiated the agreement under which Davis Rebar promised to fund Local 17's defined-contribution plan at a rate identical to the rate at which JD Steel makes contributions to the Fund. By all appearances the Iron Workers and its members are content with that arrangement; only the Fund is unhappy about it.

The Trustees respond that pension plans are better for union members than defined-contribution plans. But that proposition is far from self-evident: union members might well prefer their own 401(k)-type accounts to IOUs from a pension fund, particularly one that certified in 2008, as the Fund did, that it lacks adequate funding to meet its obligations. In any event, the Iron Workers can judge better than we or the Trustees can which type of plan—pension, or defined-contribution—is best for its members.

The Trustees respond further that our decision in *Industrial Contractors* requires a different result. But there we reversed the district court because it had "conclude[d]—incorrectly—that evidence of an intent to evade [obligations under a labor agreement] was a prerequisite to the [alter-ego] doctrine's imposition." 581 F.3d at 319. Here, we affirm the

district court on different grounds:  that the same union association negotiated contracts with both of the employer defendants, and that we have no reason to set aside the Association's judgment regarding the best interests of its members.  The Association, not the Fund, represents those members.  We therefore decline to apply the alter-ego doctrine in this case.

The Trustees separately argue that Davis Rebar is required to make contributions to the Fund under the Pension Protection Act, specifically 29 U.S.C. § 1085, which imposes various obligations on "plan sponsors."  But Davis Rebar is not a sponsor of the Fund under its contract with the Iron Workers; and for the reasons stated above, we will not treat Davis Rebar as a party to the Iron Workers' contract with JD Steel.  Davis Rebar thus is not a plan sponsor under § 1085, and this argument too is meritless.

The district court's judgment is affirmed.