*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RICHARD L. BLOEMKER, LYNN G. BLOEMKER,
  *Plaintiffs-Appellants,*

  *v.*

LABORERS' LOCAL 265 PENSION FUND,
BOARD OF TRUSTEES LABORERS' LOCAL 265
PENSION FUND, STONER & ASSOCIATES,
  *Defendants-Appellees.*

No. 09-3536

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00985—Michael R. Barrett, District Judge.

Argued: March 5, 2010

Decided and Filed: May 19, 2010

Before: SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert Armand Perez, Sr., THE PEREZ LAW FIRM CO., L.P.A., Cincinnati, Ohio, for Appellants. Bernard William Wharton, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, Patricia A. Shlonsky, ULMER & BERNE LLP, Columbus, Ohio, for Appellees. **ON BRIEF:** Robert Armand Perez, Sr., THE PEREZ LAW FIRM CO., L.P.A., Cincinnati, Ohio, for Appellants. R. Gary Winters, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, Patricia A. Shlonsky, Rebecca B. Jacobs, ULMER & BERNE LLP, Columbus, Ohio, Paul J. Cosgrove, ULMER & BERNE LLP, Cincinnati, Ohio, for Appellees.

  SILER, J., delivered the opinion of the court, in which ROGERS, J., joined. BELL, D. J. (p. 12), delivered a separate dissenting opinion.

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

―――――――――――

## OPINION

―――――――――――

SILER, Circuit Judge.  Richard L. Bloemker[1] received early retirement benefits from his employer-sponsored ERISA plan.  After Bloemker received benefits for nearly two years, the actuary administering the plan notified Bloemker that the certified benefits calculation was incorrect, his monthly payments would be decreased to reflect the appropriate amount, and Bloemker would be required to repay the excess he had received.  Bloemker filed suit, alleging that the plan and the actuary had breached a contractual agreement with him, that he detrimentally relied on the misrepresentations of the defendants, and that they breached their fiduciary duties under the plan.  The district court dismissed Bloemker's claims, and he timely appeals.  For the reasons explained herein, we affirm in part, reverse in part, and remand to the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Bloemker worked as a laborer and was a member of the Laborers' Local 265 Union ("the Union").  He participated in the Laborers' Local 265 Pension Plan ("the Plan"), a defined benefit ERISA plan, and had 27.9 years of service credit on January 10, 2005.  The Plan provides that participants can be eligible for benefits when they take normal retirement, early retirement, late retirement, or disability retirement.  The Plan sets out the requirements a participant must meet to be eligible for each of these forms of retirement and provides formulas for calculating benefits under each of these options using the participant's information and actuarial calculations.  Generally, an employee is eligible for normal retirement when he reaches age 62 and has at least five years' participation in the plan.  A participant can become eligible for early retirement at as early as age 55 if he has participated in the plan for at least five years.  The proper

―――――――――――

[1]Richard is married to Lynn Bloemker, and under the Plan she is entitled to benefits as his spouse. Both Richard and Lynn are plaintiffs in this action, and all claims and arguments asserted by Mr. Bloemker are also asserted by his wife.  Nevertheless, the singular form of Bloemker is used here.

formula for calculating early retirement benefits under the Plan depends on the age of the participant and his number of years with the Plan. The Plan provides participants with annual benefits statements which estimate the benefits to which they would be entitled at normal retirement age.

On January 10, 2005, Bloemker received his annual statement of status, which estimated that if he retired he would be entitled to a monthly benefit pension of $2,666.99. The statement also explained that this was only an estimate of benefits. Based on this information, Bloemker contacted Jennifer Bielamowicz of Stoner & Associates ("Stoner"), the third-party administrator of his plan, who acted as a pension administrator, to discuss the possibility of early retirement. He received a letter from her stating that if he were to retire on April 1, 2005, he would be eligible for "approximately $2,564.00 per month, single life annuity, payable for your lifetime only." The letter also explained that once Stoner received an application, it would send Bloemker an estimate of his joint and survivor benefits.

Bloemker applied for early retirement benefits on February 10, 2005, and selected Basic Joint and Survivor as the type of his benefit. On March 1, 2005, Bielamowicz drafted a document titled "Laborers' Local #265 Pension Plan Benefit Election Form" ("BEF"). The BEF was stamped by Stoner and contained a certification stating:

> Based on our records of your hours worked under the Plan and the contributions which have been made on your behalf, we hereby certify that you are entitled to receive the retirement benefit specified above, and that the amount shown for any optional forms of payment are equivalent to your basic benefit.

It stated that Bloemker would receive $2,339.47 per month for his life and that his wife would receive $1,169.75 per month if she were still living after his death.

Bloemker commenced early retirement and began receiving benefits under the Plan in the amount certified in the BEF. He later received a letter from Stoner on Plan letterhead dated September 26, 2006, indicating that Stoner had recently conducted an

audit and had determined that it may have erred in calculating his early retirement benefits. In December 2006, he received another letter from Stoner. This letter explained that "a computer programming error" caused it to incorrectly calculate Bloemker's early retirement benefits. It further explained that his benefit should be $1,829.71 per month instead of the $2,339.49 per month he was currently receiving and that his benefit amount would be reduced to $1,829.71 effective January 1, 2007. The letter also stated that he had been overpaid the amount of $509.78 per month for 22 months and that he was required to repay the $11,215.16 that he was overpaid. It set out several options for him to repay this amount including by making a single lump sum payment or by having his monthly benefit reduced even further to account for the overpayment.

Bloemker exhausted his administrative remedies under the Plan and commenced suit. In his complaint Bloemker claims that he had a contract with the Plan, which was executed through Stoner, for the larger amount of early retirement benefits. He argues that the Plan and Stoner made material misrepresentations to him on which he relied to his detriment. Finally, he contends that the Plan and Stoner breached their fiduciary duties to him under ERISA. While Stoner and the Plan urged the district court that the first two of these claims were preempted by ERISA, *see Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860 (6th Cir. 2007), the district court construed the first two claims as being brought under ERISA rather than state law and accordingly not preempted.[2] The district court also construed the complaint as asserting a claim of equitable estoppel under federal common law. The district court concluded that Bloemker could not make out a contract claim or a claim to recover benefits under ERISA. It also held that Stoner was not a fiduciary and that Bloemker failed to plead that the Plan or its Trustees breached a fiduciary duty. Finally, the district court noted that estoppel claims were limited to

---

[2] "ERISA preempts state laws that 'relate to' an employee benefit plan because Congress was concerned that state laws might interfere with the administration and management of such plans." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005) (citing *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96-97 (1983)). Because we construe Bloemker's complaint as stating claims under the statutory and federal common law of ERSIA, even though his contract, misrepresentation, and estoppel claims are similar to some state law claims, they are not preempted.

welfare benefit plans, not retirement benefit plans like the one in question here, and that even if Bloemker could bring an estoppel claim, his complaint failed to sufficiently allege such a claim. The district court granted the Defendants' motions to dismiss each of the claims, and denied Bloemker's motion for summary judgment as moot.

## DISCUSSION

### I. Equitable Estoppel

The district court construed Bloemker's complaint as stating a claim for federal common law equitable estoppel. We have recognized that "equitable estoppel may be a viable theory in ERISA cases," and have treated promissory estoppel in the same way. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403-04, 403 n.13 (6th Cir. 1998) (en banc). Yet we have not previously recognized equitable estoppel as a viable claim in the pension benefit—as opposed to the welfare benefit—context. *See id.* at 403 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). Our reluctance to extend estoppel has been based on the following observation from *Armistead*:

> [P]ension benefits are typically paid out of funds to which both employers and employees contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants or discrete groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced.

944 F.2d at 1300. Following a number of other circuits, we now conclude that this interest is not sufficiently weighty to defeat estoppel claims in pension cases where the representation was made in writing and where the plaintiff can demonstrate extraordinary circumstances.

The Seventh Circuit has applied its ERISA estoppel rules, which include a written representation requirement, to a case involving a pension. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007). The Seventh Circuit has also recently explained the importance—both in terms of the statutory language and in terms of

ERISA policy—of requiring ERISA estoppel plaintiffs to rely on written promises. It first noted that "ERISA plans must be 'maintained pursuant to a written instrument.'" *Orth v. Wis. State Employees Union, Council 24*, 546 F.3d 868, 872 (7th Cir. 2008) (quoting 29 U.S.C. § 1102(a)(1)). The court then explained that its previous precedents had established that the "main objection," in policy terms, to oral modifications of ERISA plans "is that they would enable the plan's integrity, and possibly its actuarial soundness, to be eroded by relatively low-level employees." *Id.* (quoting *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758-59 (7th Cir. 1994)). This policy concern is greatly lessened when the representations at issue are made in writing, and, particularly here, where the representations constituted formal certifications. The formality of the writing requirement thus lessens the danger discussed in *Armistead* that estoppel claims could undermine the financial integrity of ERISA pension plans. *See Armistead*, 944 F.2d at 1299 ("[P]ermitting oral modification of pension plans would undermine the security of pension rights, the goal Congress sought to serve by requiring that they be put in writing.")

The Second, Third, Fifth, and Ninth Circuits have also applied their ERISA estoppel rules to pension cases; each of these circuits imposes an extraordinary circumstances requirement.[3] *See Bonovich v. Knights of Columbus*, 146 F.3d 57, 62-63 (2d Cir. 1998) (applying the Second Circuit's estoppel rules to an ERISA pension claim); *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 300-05 (3d Cir. 2008)

---

[3]The First Circuit has not yet determined whether it will "recognize[] estoppel claims under ERISA's civil enforcement provisions." *Livick v. Gillette Co.*, 524 F.3d 24, 30-31 (1st Cir. 2008). The Fourth Circuit considers waiver and estoppel to be "prohibited concepts" with respect to ERISA. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008). The Eighth Circuit applies the doctrine of estoppel to ERISA cases, *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996), but we find no case from the Eighth Circuit applying, or refusing to apply, ERISA estoppel to a pension claim. The Tenth Circuit has not recognized equitable estoppel in the context of ERISA, though it has suggested that it might do so in an egregious case. *Callery v. U.S. Life Ins. Co. in N.Y.*, 392 F.3d 401, 407-08 (10th Cir. 2004). The Eleventh Circuit has applied (in an unpublished case) its ERISA estoppel rules to a pension claim. *Schena v. Metro. Life Ret. Plan for U.S. Employees*, 244 F. App'x 281, 285 (11th Cir. 2007). Uniquely, the Eleventh Circuit does not apply either a written representation or an extraordinary circumstances requirement, but it employs a comparatively rigid ambiguity requirement. *See id.* We find no cases from the District of Columbia Circuit discussing the applicability of estoppel to ERISA actions.

We find no circuit that has recognized estoppel claims under ERISA but held those claims categorically inapplicable to pension benefits. However, many of our sister circuits would reject the claim at issue here on grounds other than the fact that it is a pension claim, including some circuits' apparently strict rules requiring ambiguity.

(discussed in detail below); *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005) ("explicitly adopting ERISA-estoppel as a cognizable theory" in a pension case); *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1261-63 (9th Cir. 1997).

In *Pell*, the plaintiff Pell was employed by a company that became a DuPont subsidiary. 539 F.3d at 297. Pell accepted a permanent position at DuPont based in part on a representation to him that he would receive credit under the DuPont pension plan for his time working for the subsidiary. *Id.* at 297-98. The DuPont pension plan credited years of service from the first date of employment — for Pell, this was 1971. *Id.* After Pell began working for DuPont, DuPont repeatedly informed Pell in written statements that his beginning service date was 1971. *Id.* In 2001, when he retired, DuPont determined that Pell's actual beginning service date was 1975. *Id.* at 299. Pell sued DuPont under ERISA, and the Third Circuit applied its rule that, "[t]o succeed under [an equitable estoppel] theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Id.* at 300 (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994)). The court held that the statements regarding Pell's beginning service date were material to his retirement and that his reliance on those representations was reasonable, particularly in light of an email from a DuPont pre-retirement counselor who, in response to a direct question from Pell, stated that his beginning service date was 1971. *Id.* at 300-02. Pell demonstrated detrimental reliance based on his forgoing of opportunities because of his expected pension. *Id.* at 303. The Third Circuit held that "DuPont's repeated affirmative misrepresentations, combined with Pell's diligence, demonstrate that there are extraordinary circumstances." *Id.* at 304-05. It further held that the appropriate relief was an injunction requiring DuPont to calculate Pell's pension based on a beginning service date of 1971. *Id.* at 311.

In *Spink*, the plaintiff, Spink, was employed by Lockheed from 1939 to 1950. 125 F.3d at 1259. Then, in 1979, when Spink was 61 years old, Lockheed rehired Spink and represented to him that he would accrue credited service time under Lockheed's pension plan. *Id.* From 1979 to 1984, Lockheed sent Spink notifications indicating that

he was accruing credited service time, but in 1984 Lockheed notified Spink that he was not eligible for participation in the pension plan due to a plan rule excluding employees hired after their sixtieth birthday. *Id.* Spink sued Lockheed, asserting among other claims that Lockheed was equitably estopped from denying him credit beginning in 1979 based upon Lockheed's false representations about his pension eligibility. *Id.* at 1261. The district court dismissed this claim on a motion to dismiss. *Id.* On appeal, the Ninth Circuit held that

> Spink must allege a material misrepresentation, reasonable and detrimental reliance upon the representation, extraordinary circumstances, that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally, that representations were made involving an oral interpretation of the plan.

*Id.* at 1262. After a discussion that focused on the ambiguity requirement, the court concluded that Spink had alleged sufficient facts to meet all of these requirements. *Id.* at 1262-63. Following *Pell* and *Spink*, we hold that ERISA equitable estoppel applies to pension plans where a plaintiff can demonstrate extraordinary circumstances in addition to the traditional estoppel elements.

Under our precedent, the elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Armistead*, 944 F.2d at 1298 (citing *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987)).

Bloemker has alleged a valid claim for equitable estoppel according to these elements. He alleges that he received a document stating that he could elect a pension benefit of $2,339.40 per month for life with an additional benefit of $1,169.75 per month

for his wife after his death if she survived him. This document stated that Stoner certified that Bloemker was entitled to receive that benefit. It clearly satisfies the first estoppel requirement. The second element requires the plaintiff to demonstrate that the defendant's actions "contain[ed] an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud," *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007) (quoting *Trs. of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2000)), which Bloemker has done by alleging that the Plan and Stoner were aware of the true facts and that they intended for Bloemker to rely upon their representations. These allegations also satisfy the third estoppel element. Finally, Bloemker has alleged that he was not aware of the true facts, and that he relied upon these misrepresentations when deciding to retire, which is sufficient to satisfy the remaining elements of estoppel.

Nevertheless, we have previously held that estoppel "cannot be applied to vary the terms of the unambiguous plan documents." *Sprague*, 133 F.3d at 303. We do not apply that rule here, because neither of the rationales invoked by *Sprague* to justify its general prohibition against application of estoppel to unambiguous provisions is sufficient to outweigh the extraordinary circumstances presented by this case. *Sprague* stated two justifications for its general rule:

> First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Id.* Assuming the truth of Bloemker's allegations, as we must on a motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the first of these rationales is inapplicable. Bloemker alleges that it would have been impossible for him to determine his correct pension benefit given the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions. He has therefore alleged

sufficient facts such that a fact finder could determine that his reliance on the certification of his pension benefits was reasonable.

*Sprague* also asserts that enforcement of something other than the plan documents is inconsistent with ERISA; our precedents already recognize that this is not true in all circumstances, and we determine that this assertion is not applicable in the present case. In *Armistead*, we acknowledged the defendant's argument that recognizing equitable estoppel would lead to enforcement of something other than the plan provisions and thus effect an impermissible oral modification of an ERISA plan.[4] 944 F.2d at 1299. We rejected the argument that applying estoppel was always inconsistent with ERISA and held that estoppel was permissible even though "[e]quitable estoppel . . . precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel." *Id.* We have thus allowed enforcement of something other than the plan documents based on estoppel under appropriate circumstances. We hold that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. Bloemker has alleged facts that could fulfill all of these requirements; therefore, dismissal of his estoppel claim was not appropriate.

## II. Fiduciary Duty

Because *Flacche v. Sun Life Assurance Co.*, 958 F.2d 730 (6th Cir. 1992), is controlling, we affirm the district court's determination that Bloemker cannot assert a claim for breach of fiduciary duty against any of the defendants.

---

[4]We did not impose in *Armistead* the written representation requirement that we impose in this case because *Armistead* involved a welfare rather than a pension benefit. *See* 944 F.2d at 1299-1300.

### III. Contract Claim

Section 1132(a)(1)(B) of ERISA provides that a plan beneficiary may bring suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). As discussed above, the written ERISA plan documents govern the rights and benefits of ERISA plan beneficiaries. *Sprague*, 133 F.3d at 402. Where a retirement plan creates benefits in excess of those established by ERISA, however, those rights may be enforceable in contract under federal common law. *See Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 425 n.6 (6th Cir. 1992). Furthermore, when additional documents operate to modify or amend the plan, a beneficiary can rely on those modifications to determine his benefits. *See Sprague*, 133 F.3d at 403.

Here the written Plan documents provide the formula for calculating benefits to which a beneficiary would be entitled depending on whether the beneficiary retired early, on time, or late. The BEF signed by Bloemker did not purport to be an amendment or a modification to the Plan. Nor did it purport to create a separate contract for benefits in addition to those provided by the Plan. Instead, it simply claimed to provide the actuarially certified benefit Bloemker was entitled to, *based on the Plan*. Accordingly, the district court was correct to conclude that Bloemker cannot recover benefits under § 1132 of ERISA based on a modification of the Plan or a separate supplemental contract.

**AFFIRMED IN PART, REVERSED IN PART**, and **REMANDED** for further proceedings consistent with this opinion**.**

---

**DISSENT**

---

ROBERT HOLMES BELL, District Judge, dissenting.  I agree with the desirability of a rule that permits an equitable estoppel claim to vary ERISA pension plan provisions which, although unambiguous, do not allow for individual calculation of benefits.  Nevertheless, it appears that any rule that permits an equitable estoppel claim to vary ERISA pension plan provisions that are unambiguous conflicts with the rule announced in *Sprague v. General Motors Co.*, 133 F.3d 388 (6th Cir. 1998) (en banc), that estoppel cannot be applied to vary the terms of unambiguous provisions. *Id.* at 404.  Accordingly, until *Sprague* is overturned by an en banc panel of this Court or the United States Supreme Court, I believe we are required to affirm the dismissal of Bloemker's equitable estoppel claim. *United States v. Simpson,* 520 F.3d 531, 540-41 (6th Cir. 2008) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001)); 6th Cir. R. 206(c).