NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0933n.06

No. 13-5306

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 30, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CONNIE THACKER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SCHNEIDER ELECTRIC USA, INC. | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

_____/

BEFORE:    MERRITT and CLAY, Circuit Judges; and STAFFORD, District Judge.[*]

STAFFORD, District Judge.

The plaintiff-appellant, Connie Thacker ("Thacker"), filed this ERISA action after her

former employer, Schneider Electric USA, Inc. ("Schneider"), denied her applications for

disability retirement and disability life insurance benefits.  The district court entered summary

judgment for Schneider.  On Thacker's appeal from that judgment, we **AFFIRM**.

## I.  BACKGROUND

Schneider (f/k/a Square D Company) hired Thacker on June 22, 1994, to work at a plant

in Lexington, Kentucky.  As a union employee, Thacker was eligible to participate in employee-

sponsored benefit plans governed by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001–1461, including the Square D Company Coordinated Bargaining

---

[*] The Honorable William H. Stafford, Jr., Senior United States District Judge for the
Northern District of Florida, sitting by designation.

Employees' Pension Plan (the "Pension Plan") and the Group Life and Health Plan for Coordinated Bargaining Employees (the "Life and Health Plan"). The Pension Plan is an "employee pension benefit plan" as defined in 29 U.S.C. § 1002(2). The Life and Health Plan is an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1). At all relevant times, Schneider (or its predecessor, Square D Company) has been the plan sponsor for both the Pension Plan and the Life and Health Plan. The plan administrator for both plans is an administrative committee appointed by Schneider. Both plans grant broad discretion to the plan administrator to determine eligibility for benefits and to construe and interpret the terms of the respective plan documents.

Thacker began a disability leave of absence on June 3, 2008. After that date, she did not return to work or perform any of her job functions. On June 15, 2009, Thacker stopped paying the required premiums under the Life and Health Plan. She was advised in November 2009 that, in fact, her medical and life insurance coverage was cancelled retroactive to June 15, 2009, for non-payment of premiums.

On September 23, 2010, more than a year after she ceased being covered under the Life and Health Plan, Thacker applied to Schneider for both disability retirement benefits and disability life insurance benefits. Included with her applications was a copy of a letter from the Social Security Administration ("SSA") dated September 16, 2010, advising Thacker that she was entitled to monthly disability benefits retroactive to June 1, 2009.[1] Her application for disability life insurance benefits was soon after denied based on her failure to submit proof—as required by the Life and Health Plan—of "Total and Permanent Disability" within one year after

---

[1] The SSA determined that Thacker became disabled on December 31, 2008, entitling her to benefits beginning five months later.

ceasing to be a covered individual. Her application for disability retirement benefits was similarly denied for untimeliness.

After she unsuccessfully appealed the two decisions administratively, Thacker filed this action, seeking reversal of the plan administrator's denial of her applications for benefits. The district court entered summary judgment for Schneider, finding—among other things—that the denial of Thacker's applications for benefits was *not* arbitrary and capricious. This appeal followed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment in an ERISA action, "applying the same standard of review to the administrator's action as required by the district court." *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 616 (6th Cir. 2012) (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006)). Summary judgment is appropriate where the pleadings and affidavits show that there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In an ERISA case, the relevant genuine issue of material fact is whether the administrator's decision was appropriate in light of the applicable standard of review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011).

ERISA does not specify the judicial standard of review applicable to actions challenging a plan administrator's benefits determination. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), however, the Supreme Court established that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115.

When discretionary authority to determine eligibility for benefits or to construe the terms of a plan is granted to an ERISA plan administrator, the highly deferential arbitrary-and-capricious standard of review is appropriate. *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 657 (6th Cir. 2013).

Here, the district court found—and Thacker does not dispute—that both the Pension Plan and the Life and Health Plan give the plan administrator discretionary authority to not only interpret the terms of the respective plans but also to determine eligibility for benefits under the plans. The district court accordingly determined—and we agree—that the arbitrary-and-capricious standard of review governs the issues in this case. The district court correctly rejected Thacker's arguments for a less deferential standard of review based on the plan administrator's purported bias. *See id.* at 664.

### III. ANALYSIS

We review *de novo* a district court's decision regarding the denial of benefits under an ERISA plan. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 258 (6th Cir. 2006). Like the district court, we will not overturn an administrator's discretionary decision to deny benefits unless that decision was arbitrary or capricious. An administrator's decision is not arbitrary or capricious "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted).

### A. Disability Life Insurance Benefits

Thacker's application for disability life insurance benefits was denied because she failed to submit proof of total and permanent disability within a year after she ceased to be a covered individual under the Life and Health Plan. The Life and Health Plan expressly provides that "[i]f you become totally and permanently disabled, your Term Life Insurance will be paid to you . . . [provided] you furnish proof of Total and Permanent Disability within a year after ceasing to be a covered individual." The Life and Health Plan also provides that, if—as here—an employee becomes totally disabled prior to age 60, "life insurance will be continued during the period of total disability, *as long as premiums are paid*." The plan administrator determined that Thacker ceased to be a covered individual on June 15, 2009, based on her failure to pay the required premiums after that date. Thacker does not dispute that she failed to pay the required premiums after June 15, 2009. She also does not dispute that she submitted her SSDI award, which qualified as proof of total and permanent disability, more than a year after she stopped paying the required life insurance premiums. Because Thacker failed to comply with the clear terms of the Life and Health Plan, the plan administrator's denial of Thacker's application for disability life insurance benefits was not arbitrary or capricious. Thacker's arguments to the contrary are without merit.

## B. Disability Retirement Benefits

Under the terms of the Pension Plan, "an application for disability retirement benefits must be filed with the Administrator within two years after the date the Participant is last actively at work at the Company as a condition to receiving disability retirement benefits." Also under the terms of the Pension Plan, a social security disability award may be used to support a claim for total and permanent disability "provided that the Social Security Disability is incurred

-5-

while the participant is in the Company's active employ; and further provided that the effective date of the Social Security disability benefits must be a date within six (6) months after the date the Participant stops actively working at the Company." The Pension Plan does not define the phrases "active employ," "actively at work," or "actively working."[2]

The plan administrator denied Thacker's claim for disability retirement benefits for two reasons: (1) Thacker failed to submit her application for benefits within two years after the date she was last "actively at work at the Company;" and (2) the social security disability award that she submitted as evidence of a total and permanent disability did not become effective within six months after the date she stopped "actively working at the Company." The plan administrator determined that Thacker stopped "actively working at the Company" on June 3, 2008, the day her medical leave of absence began. Her application for benefits was submitted on September 24, 2010, more than two years later; and her SSDI award became effective on June 1, 2009, more than six months after she began her leave of absence. The plan administrator thus determined that Thacker failed to meet the Pension Plan's timing requirements.

The district court concluded that the plan administrator's interpretation of the phrases "actively at work" and "actively working" was reasonable and, accordingly, found nothing arbitrary or capricious about the administrator's decision to deny Thacker's claim for retirement benefits based on the untimeliness of Thacker's application and SSDI award. We agree with the district court's assessment. ERISA plan provisions are interpreted "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (en banc). Used in the ordinary sense, the words "actively working" and "actively at

---

[2] In contrast, the Life and Health Plan defines "actively at work" to mean "working your regularly scheduled hours per week."

work" denote a functioning employee who is performing her job duties. It was thus reasonable for the plan administrator to find that, when Thacker took leave of absence on June 3, 2008, neither coming to her place of work nor performing any of her job duties thereafter, she stopped "actively working at the Company." It follows that the plan administrator's decision to deny Thacker's application for retirement benefits based on her failure to comply with the Pension Plan's timing requirements was neither arbitrary nor capricious.[3]

## IV. CONCLUSION

For the reasons stated above and for the reasons stated by the district court, we **AFFIRM**.

---

[3] Like the district court, we find that Thacker's estoppel claim is foreclosed by *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010), which sets forth the elements of an estoppel claim where, as here, a pension plan's terms are *unambiguous*. *See id.* at 442–43. That being the case, the district court did not err in denying Thacker's request to supplement the administrative record or to conduct limited discovery regarding her estoppel claim.