NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0123n.06

No. 15-1493

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 02, 2016
DEBORAH S. HUNT, Clerk

JOHN R. PAUL, JR.                                          )
                                                           )
     Plaintiff-Appellee,                                  )
                                                           )
v.                                                         )                ON APPEAL FROM THE
                                                           )                UNITED STATES DISTRICT
DETROIT EDISON COMPANY & MICHIGAN                          )                COURT FOR THE  EASTERN
CONSOLIDATED GAS COMPANY PENSION                           )                DISTRICT OF MICHIGAN
PLAN                                                       )
                                                           )
     Defendants-Appellants.                               )


BEFORE:     BATCHELDER and GRIFFIN, Circuit Judges; CARR, District Judge.[*]

     ALICE M. BATCHELDER, Circuit Judge.  In 2013, Appellee John Paul, Jr. ("Paul")

filed suit as a pro se litigant against Detroit Edison Company ("DTE") and Michigan

Consolidated Gas Company Pension Plan ("Michcon"), seeking relief from the reduction of his

benefits two years after his retirement.  The district court granted summary judgment to Paul on

grounds of equitable estoppel.  On appeal, DTE and Michcon raise three issues:  (1) whether the

district court violated due process by relying on unsworn testimony given by Paul at the

summary judgment hearing; (2) whether the district court erred by not reviewing the pension

plan administrator's record under an arbitrary and capricious standard; and (3) whether the

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

district court erred by finding that Paul proved sufficient facts to support a claim of equitable estoppel. We find no error in the district court's decision and therefore AFFIRM.

I.

Paul began working for DTE in 1984. From 1984 to 1988, he was employed as a temporary employee, not as a regular employee and member of the union. In 1988, he became a regular employee represented by the union, and became eligible for the company's pension plan for union workers. At the time of his retirement in 2009, Paul had worked for DTE for 23.970100 years, but he had accrued only 20.96645 years of credited service under the pension plan. Thus, 3.00365 years of his employment should not have been counted toward his benefit service years.

In 2009, when Paul began considering early retirement, he met with representatives from Michcon in order to determine the benefits for which he was eligible. Michcon provided Paul with a written "Pension Calculation Statement." The calculations contained in this statement were compiled for Michcon by Aon Hewitt, which served as the third-party administrator of the plan. Each statement shown and discussed with Paul stated his benefit service years at 23.970100. As Paul stated in a letter to Michcon, "On 4 separate occasions Michcon provided me with a [sic] pension statements[.] [O]n all of these statements all the dates were generated by your staff and they all were the same." Moreover, Paul was given explicit verbal assurances that the calculations given to him were correct. During his meeting with a company representative to sign the final pension plan papers, Paul specifically noted that he had worked part of his time as a non-union employee and most of his time as a union employee. When he asked whether this would make a difference in the calculation of his benefit level, he was assured that there was no

problem and that the date on the written statements was correct.[1]  On the basis of these calculations and assurances, Paul decided to retire early.  His final day of employment was June 30, 2009.

Written and spoken assurances notwithstanding, the Michcon "Pension Calculation Statement" included an important disclaimer:

> DTE Energy reserves the right to correct any errors.  If it's determined at any time that the information provided on this statement conflicts with the benefit defined by the MichCon Retirement Plan, the MichCon Retirement Plan will prevail.  Under the law, a plan must be operated in accordance with its terms.

This disclaimer appeared at the end of each copy of the statement given to Paul.

In 2011, two years after Paul's retirement, Michcon discovered an error in the calculation of Paul's benefit service years.  On December 27, 2011, Michcon notified Paul that his benefits should have been calculated from the time that he joined the union employees under the pension plan in 1988, not from the time that he began work for DTE as a temporary employee in 1984. [*Id.*]  In order to correct this error, Michcon reduced Paul's monthly retirement benefits by $54.42 and informed him that he would have to repay a lump sum of $14,429.36.

On February 3, 2012, Paul informed Michcon that he objected to their Pension Plan Overpayment Notice of December 27, 2011.  He explained that "[t]his oversight was a result of Michcon's neglect and if this was discovered at the time of my accepting your pension final offer I WOULD NOT HAVE RETIRED, And [sic] worked the additional years to full retirement." He requested Michcon to accept responsibility for their original miscalculation and to reinstate his original benefit amount.

---

[1]The details of this meeting were summarized by Paul before the district court during the summary judgment hearing.  DTE and Michcon declared that they had no reason to dispute the fact of Paul's meeting with a company representative.  They raised no objection to any of the facts presented by Paul regarding that meeting. [R. 32 at Pg. ID#1132]  DTE and Michcon now argue against the use of these facts, but as we explain at II. A. of this opinion, their arguments fail.

On March 3, 2012, Paul sent a letter to the Department of Labor, explaining his dilemma and requesting assistance. And on June 13, 2012, the Employee Benefits Security Administration (EBSA) sent a letter to DTE, instructing the company to inform Paul of the reasons for its decision. In the meantime, DTE and Michcon had responded to Paul's objection letter, explained their rationale, denied responsibility, and referred him to the Qualified Plan Appeals Committee ("Committee"). Paul filed an appeal with the Committee, and DTE and Michcon informed the EBSA that his claim was under administrative review and appeal.

In Paul's appeal to the Committee, he requested that he be granted a complete restoration of his original benefits or, alternatively, that he be reinstated in his employment with all seniority and back pay benefits. The Committee upheld Michcon's recalculation of Paul's benefits, but reversed Michcon's decision to force Paul to repay the amount overpaid from 2009 to 2011. The Committee explained that "[a]fter reviewing all of the circumstances of your situation, the Committee determined that it would be more appropriate for the third-party who incorrectly calculated your benefits to repay the excess benefits to the Plan." This decision, however, was contingent upon Paul's commitment not to claim any portion of the Michcon "Special Lump Sum Severance Benefit" to which he would otherwise be entitled. The Committee concluded its decision by informing Paul of his right to file suit under ERISA Section 502(a) if he disagreed with the outcome of the appeal.

On August 30, 2013, Paul filed suit in state court. His complaint in its entirety read:

> Detroit Edison without my consent modified a retirement agreement 2 years after the original agreement. In their modification they also violated Local 223/Local 80 retirement provisions in the labor agreement in force at the time of the original agreement. I am requesting that all monies owed me to [sic] be paid and any over payment be charged to the company contractor who made the error also all cost and damages in the amount of 25,000.00 US dollars.

DTE and Michcon immediately removed to federal court and filed their answers and affirmative defenses. Michcon also filed a crossclaim for repayment of $14,439.36, which it claims represents the amount by which Aon Hewitt miscalculated Paul's original lump sum benefit payment. In July 2014, both sides filed motions for summary judgment. Relying on *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010), the district court found that Paul had provided sufficient evidence to satisfy the elements of equitable estoppel. The district court therefore granted Paul's motion for summary judgment and denied DTE and Michcon's cross-motion and counterclaim. DTE and Michcon timely appealed.

II.

A.

DTE and Michcon raise three issues in this appeal. First, DTE and Michcon assert that the district court "unexpectedly and without notice, elicited new 'evidence' by engaging Mr. Paul in an unsworn question-and-answer session without giving Defendants an opportunity to rebut the evidence or notice that they should be prepared to do so." They argue that this constituted a violation of their due process rights because "a court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991). But there are two problems with their argument. First, DTE and Michcon fail to make their argument with particularity. Although they assert that new evidence was introduced and that the district court wrongly elicited and relied on unsworn testimony at the summary judgment hearing, they fail to provide even a single example of what new facts were introduced or how such facts were improperly relied on by the district court. As we have held in numerous cases, "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (internal quotation marks omitted). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). DTE and Michcon do not cite any portion of the district court's opinion that contains facts not properly in the record. They do not cite any portion of the hearing where the judge counseled Paul or advocated for him. And they do not cite any specific ways in which they were actually surprised by the facts contained in the district court's opinion. Nor do they offer any criteria for discerning which facts were improperly considered.

Second, in reaching its decision, the district court relied on facts already established by the record and known by DTE and Michcon. In the district court's analysis of the case, it cited to only two pages of the hearing transcript. At those points in the transcript, the judge asked Paul to describe his reliance on the representations and calculations of DTE and Michcon, and then asked DTE and Michcon to clarify how the benefits were calculated and who was responsible for those calculations. A review of the record reveals that, prior to the summary judgment hearing, it contained evidence of Paul's reliance on the written and oral calculations and assurances that he received from DTE and Michcon. In fact, the evidence of his reliance was submitted to the district court by DTE and Michcon in an exhibit supporting their motion for summary judgment. Furthermore, the district court asked DTE and Michcon's counsel—not Paul—for clarification regarding who was responsible for calculating Paul's benefits. It is impossible for DTE and Michcon to show that they lacked proper notice of the facts relied on by the district court when

they were the ones who first submitted those facts to the district court and relied on those facts in their argument.

## B.

Next, DTE and Michcon assert that the district court erred by failing to apply an arbitrary-and-capricious standard of review in its consideration of the Committee's decision on Paul's appeal. We have previously held that "[g]enerally, federal courts review a plan administrator's decision to deny benefits de novo. But, where the plan administrator reserves discretionary authority to determine eligibility and construe policy terms, the more deferential arbitrary and capricious standard of review applies." *Schwalm v. Guardian Life Ins. Co.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal citations omitted). Here, the nature of the administrator's discretionary authority under the plan is irrelevant because we are not reviewing the manner in which the Committee calculated Paul's eligibility or the conclusion to which the Committee came. Rather, we are considering whether, the Committee's determination and conclusion notwithstanding, Paul should be given equitable relief.

## C.

This brings us to the third and primary issue of this appeal, namely, whether Paul has satisfied the heightened requirements for the application of equitable estoppel within the context of ERISA. Our analysis of this issue is controlled by our precedent in *Bloemker v. Laborers' 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010). There, we stated that,

> "Under our precedent, the elements of an equitable estoppel claim are: 1) conduct
> or language amounting to a representation of material fact; 2) awareness of the
> true facts by the party to be estopped; 3) an intention on the part of the party to be
> estopped that the representation be acted on, or conduct toward the party asserting
> the estoppel such that the latter has a right to believe that the former's conduct is
> so intended; 4) unawareness of the true facts by the party asserting the estoppel;
> and 5) detrimental and justifiable reliance by the party asserting estoppel on the
> representation."

*Bloemker*, 605 F.3d at 442. We expanded upon this standard to "hold that ERISA equitable estoppel applies to pension plans where a plaintiff can demonstrate extraordinary circumstances in addition to the traditional estoppel elements." *Id.* at 442. These extraordinary circumstances must include three things: "(1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Id.* at 444. These eight elements constitute a demanding standard for proving equitable estoppel in a dispute over a pension plan, but if they are satisfied, equitable relief is appropriate.

Paul satisfies both the original five estoppel elements and the additional three elements for the ERISA context. First, DTE and Michcon, made repeated material representations to Paul, in both word and deed, by issuing written statements to him and by having a representative meet with him to answer his questions and to formalize his retirement. This is directly parallel to the representations made by the Union in *Bloemker*. In both cases, the pension plan administrator issued written statements to the prospective retirees, certifying that their monthly payments would stay at a certain level. These are material representations made by the party to be estopped. *See Bloemker*, 605 F.3d at 442.

Second, as *Bloemker* states, this element "requires the plaintiff to demonstrate that the defendant's actions contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Id.* at 443 (quoting *Crosby v. Rohm & Haas, Co.*, 480 F.3d 423, 431 (6th Cir. 2007)) (internal quotation marks and citations omitted). Once again, Paul's situation closely parallels the facts of *Bloemker*. In that case, after having established Bloemker's retirement benefit level, the Union discovered that "a computer programming error" had thrown off their calculation and that his proper benefit level was

$509.78 per month less than their original calculation. *Id.* at 439. Here, in similar fashion, after giving repeated written and oral assurances to Paul that his retirement benefit was properly calculated, DTE and Michcon have concluded that Paul's monthly payment must be reduced by $54.42 and that he owes them a full repayment of $17,776.35, which equals the combined amount of their monthly and lump sum overpayments to him. This is a gross miscalculation for which they must bear responsibility. They were the only ones in a position to know the true facts, they assumed that they knew the true facts, they failed to ascertain the true facts when Paul specifically asked if the calculations were correct, and they repeatedly assured Paul that they knew the true facts. Just as we held in *Bloemker*, this amounts to constructive fraud and satisfies the second element of equitable estoppel.

Third, DTE and Michcon invited Paul to act in response to their representations. In fact, DTE and Michcon were actively inviting employees to consider early retirement by offering new incentives and modifications to the pension plan. Moreover, in his individualized dealings with DTE and Michcon regarding his own retirement, Paul had every right to believe that the repeated representations made to him were inviting him to retire. *See id.* at 442–43. The assurances given by DTE and Michcon would not make any sense unless they were backed by the understanding and intention that Paul would act upon them and retire.

Fourth, Paul was completely unaware that there was an error in his benefits calculation, he had no reason to believe that there was an error, and he had no way of double-checking the calculation to find an error. *See id.* As with Bloemker, so also with Paul—it would have been impossible for him "to determine the amount of pension benefit owed to him because of the complex actuarial calculations required to determine the amount and his lack of knowledge of

relevant actuarial assumptions." *Haviland v. Metropolitan Life Ins. Co.*, 730 F.3d 563, 569 (6th Cir. 2013).

Fifth, Paul detrimentally relied on the representations that were made to him. He suffered appreciable economic damages and would not have accepted the early retirement offer if his benefits had been properly represented to him. *See id.* His reliance was reasonable for the same reasons that Bloemker's reliance was reasonable. *See Bloemker*, 605 F.3d at 443.

Paul also satisfies the three additional elements prescribed in *Bloemker*. First, there was a written representation from DTE and Michcon to Paul regarding his benefit levels. In fact, there were multiple written representations, all of which indicated that his date of hire was 1984, not 1988. Second, even though the plan provisions were unambiguous insofar as they allowed for DTE and Michcon to make corrections to benefit calculations, Paul—like Bloemker—was unable "to determine his correct pension benefit given the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions." *See Bloemker*, 605 F.3d at 443. Third, the balance of equities favors Paul since he suffered substantial economic damages. Comparing this case to *Bloemker*, Paul's lump sum repayment would actually be $3,000 more than Bloemker's. And as Paul emphatically indicated, he would not have retired if he had known that his benefits would be reduced to such a level.

III.

Quite simply, we find that this case directly parallels *Bloemker*. Although equitable estoppel is a rare remedy in an ERISA context, Paul's case presents the same extraordinary circumstances that we addressed in *Bloemker*. Therefore, we AFFIRM the judgment of the district court granting summary judgment to Paul and denying DTE and Michcon's cross-motion for summary judgment and counterclaim for repayment.

GRIFFIN, Circuit Judge, dissenting.

Although I join the majority regarding the first two issues, I respectfully disagree that defendants' actions constituted constructive fraud as a matter of law. Summary judgment is not warranted because there are genuine issues of material fact. I would reverse and remand for further proceedings.

I respectfully take issue with the majority's application of equitable estoppel's second element under *Bloemker v. Laborers' Local 265 Pension Fund*, the "awareness of the true facts by the party to be estopped." 605 F.3d 436, 442 (6th Cir. 2010). This element "requires the plaintiff to demonstrate that the defendant's actions contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Id.* at 443 (citations and alterations omitted). We have also held that when the party to whom estoppel is to be applied "ma[kes] an honest mistake" in calculating benefits, it is only "guilty of *misfeasance*, not the *malfeasance* that estoppel requires." *Crosby v. Rohm & Hass Co.*, 480 F.3d 423, 431 (6th Cir. 2007) (emphasis added); *accord Stark v. Mars, Inc.*, 518 F. App'x 477, 482 (6th Cir. 2013); *Solomon v. Med. Mut. of Ohio*, 411 F. App'x 788, 794 (6th Cir. 2011).

The majority concludes the facts here are indistinguishable from those in *Bloemker*. After all, both involve union employees who retired based on a calculation of retirement benefits by a third-party administrator, and when those calculations turned out to be wrong, the employers sought to reduce benefits and recover overpayments. However, although the facts of our case and *Bloemker* are indistinguishable, the procedural posture—and more specifically, the remedy upon remand—is very different.

In *Bloemker*, our court reversed the grant of a motion to dismiss in favor of the defendant and remanded for further proceedings. 605 F.3d at 444. In doing so, we held that Bloemker's

complaint sufficiently alleged "constructive fraud" by claiming that the defendants "were aware of the true facts and that they intended for Bloemker to rely upon their representations." *Id*. at 443. Importantly, we assumed the truth of this allegation given that it was before us on a motion to dismiss. *Id*. And all Bloemker needed to do at that stage was allege "enough fact[s] to raise a reasonable expectation that discovery [would] reveal evidence of" his claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The remedy was a remand for further proceedings, including the possibility of a trial on disputed issues of material fact.

Here, rather than holding that plaintiff's complaint alleged facts sufficient to survive a motion to dismiss, the district court granted summary judgment in plaintiff's favor. On the second element, the district court reasoned that the representative's assurances regarding the correctness of his credited years of service were "so grossly negligent as to amount to constructive fraud upon Plaintiff," and that the representative's "failure to properly investigate the concern raised by Plaintiff was not an honest mistake but was precisely the sort of malfeasance that may give rise to constructive fraud." In agreeing, the majority concludes defendants must "bear responsibility" for these misrepresentations because they were the "only ones in a position to know the true facts," "assumed that they knew the true facts," "failed to ascertain the true facts" when questioned by Paul, and "repeatedly assured Paul that they knew the true facts."

However, a reasonable trier of fact could arrive at an alternative verdict—defendants' reliance on Aon Hewitt, while perhaps negligent, did not rise to the level of gross negligence so as to constitute constructive fraud upon Paul. There is no record evidence that defendants had reason to know Aon Hewitt made a miscalculation, that they unreasonably relied upon Aon Hewitt's certifications that Paul's benefit service years were what it purported them to be, or that

the representative acted with such disregard to Paul that his actions constituted gross negligence. Defendants' awareness of the true facts is material and in dispute—a reasonable person could conclude their conduct was not grossly negligent. When reasonable persons "might reach different conclusions" as to whether there is negligent conduct, our legal system "emphasize[s] the appropriateness of leaving the question to the [trier of fact]." *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 353 (1943). *See also Wendrow v. Mich. Dep't of Human Servs.*, 534 F. App'x 516, 531 (6th Cir. 2013) (applying Michigan law). Following trial, the trier of fact should decide what the facts are and what they support. Summary judgment under these circumstances is not warranted.

I join the majority opinion in its resolution of the other issues.